# Illinois Official Reports

## Appellate Court

*Flanigan v. Board of Trustees of the University of Illinois at Chicago*,
**2018 IL App (1st) 170815**

| | |
|---|---|
| Appellate Court Caption | ASA FLANIGAN, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS AT CHICAGO, TIMOTHY F. MURPHY, an Individual, JAMES W. HALL, an Individual, and DOES I-X, Inclusive, Defendants (The Board of Trustees of the University of Illinois at Chicago, Timothy F. Murphy, an Individual, and James W. Hall, an Individual, Defendants-Appellees). |
| District & No. | First District, Fifth Division <br> Docket No. 1-17-0815 |
| Filed | December 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-9947; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | George C. Pontikes, of George C. Pontikes & Associates, P.C., of Chicago, for appellant. <br><br> Norman P. Jeddeloh, of Saul Ewing Arnstein & Lehr LLP, of Chicago, for appellees. |

Panel JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Hall concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Asa Flanigan, a medical student, was dismissed from the University of Illinois College of Medicine (College of Medicine). In response, plaintiff filed a second amended complaint for declaratory judgment, seeking an order reversing his dismissal where defendants—the Board of Trustees of the University of Illinois at Chicago (Board), Timothy Murphy, and James Hall—violated his constitutional due process rights and exceeded their authority by violating the University of Illinois's (University) student disciplinary policy. The motion was dismissed for lack of subject matter jurisdiction based on the doctrine of sovereign immunity.

¶ 2 On appeal, plaintiff claims that this court has jurisdiction to consider the second amended complaint. More specifically, plaintiff contends the matter is not barred by the doctrine of sovereign immunity, but instead falls under the exception discussed in *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485. Plaintiff additionally contends the circuit court erred in failing to draw all reasonable inferences in his favor prior to dismissing his second amended complaint. Plaintiff finally contends that disputed issues of material fact prohibit the dismissal of his second amended complaint. Based on the following, we affirm.[1]

¶ 3 I. BACKGROUND

¶ 4 On March 23, 2015, plaintiff filed a police report with the University of Illinois Police Department because he believed that he was "being followed by two subjects and that his phone had been cloned." On April 14, 2015, James Hall, the dean of student affairs for the College of Medicine, informed plaintiff via letter that he was being placed on a temporary suspension from clinical activities and was required to complete a fitness of duty evaluation. The letter provided that:

> "All students in the College of Medicine are required to exhibit [b]ehavior that complies with all standards important to success in the curriculum, is consistent with applicable professional obligations, and ensures the safety of patients and their community. Any behavior that puts the student, the campus community or a patient's safety at risk must be addressed."

The letter acknowledged that Hall had learned of plaintiff's police report, which "caused serious concern about [plaintiff's] ability to function in the program." Hall instructed plaintiff to schedule an appointment for the fitness of duty evaluation with Dr. David Marder and "to report no later than April 30, 2015." The letter indicated that plaintiff would "not be allowed to return to clinical activities until [his] return has been authorized by Dr. Marder." The letter additionally stated that plaintiff's failure to timely report to Dr. Marder "may lead to action

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

by the Student Progress and Promotion's Committee or referral of the matter to the disciplinary process."

¶ 5    In his second amended complaint, plaintiff alleged his attorney advised him to schedule a fitness of duty evaluation with an independent doctor not affiliated with the University. Plaintiff's counsel was concerned that Dr. Marder could not be objective because plaintiff had a pending lawsuit against the Board. According to his second amended complaint, plaintiff informed Hall of his decision to have the fitness of duty evaluation performed by an independent doctor, and Hall did not object. Hall allegedly asked for the name of the independent evaluator. Plaintiff alleged he was evaluated on May 1, 2015, by Jesse A. Newman, M.D. A report attached to plaintiff's second amended complaint demonstrated that Dr. Newman found plaintiff to be of "stable and capable mind and body and able to perform every and all duties" required to complete his doctorate degree.[2]

¶ 6    Also on May 1, 2015, Hall sent an email notification to plaintiff, indicating that plaintiff failed to comply with the requirements outlined in Hall's April 14, 2015, letter. Hall instructed plaintiff to "immediately contact" Dr. Marder and arrange for the evaluation "as required" or Hall would "report [plaintiff's] lack of compliance to the Student Progress and Promotions Committee." On the same date, Catherine Best, plaintiff's academic advisor, emailed Hall to inform him that plaintiff had completed a fitness of duty evaluation with someone other than Dr. Marder. Best inquired when plaintiff's suspension would be lifted. Then, on May 3, 2015, Best emailed plaintiff raising concerns regarding Hall's insistence that plaintiff submit to another fitness of duty evaluation with the University doctor. In her email, Best opined that plaintiff passed an "unbiased" fitness of duty evaluation.

¶ 7    On May 18, 2015, Hall informed plaintiff via letter that the Student Progress and Promotions Committee (SPPC) had met and unanimously agreed that his "consistent disregard for and failure to comply with the directives of the College administration violate[d] the Standards of Professional Behavior as provided in the Student Academic Policies and Professional Standards." Hall invited plaintiff to attend the next SPPC meeting on June 10, 2015, where the committee would be considering whether to recommend plaintiff's dismissal from the medical program. Hall advised plaintiff that he could bring an advisor or an attorney with him to the meeting. Plaintiff was instructed that, if he chose to bring an attorney to the meeting, notice was required three days prior thereto in order for the University to arrange representation. Finally, Hall informed plaintiff that the recommendation of the SPPC would be forwarded to the College Committee on Student Promotions (CCSP) to be considered at its meeting on June 23, 2015.

¶ 8    On June 8, 2015, at 8:30 p.m., plaintiff sent an email with an attached letter, notifying Hall that he would attend the June 10, 2015, meeting with his attorney and Best. Plaintiff requested the time and location of the meeting. In addition, plaintiff's counsel sent a letter to Hall dated June 8, 2015, stating that plaintiff had been examined by Dr. Newman, a Pennsylvania physician, and plaintiff was found fit for duty. On June 9, 2015, at 7 p.m., Hall informed plaintiff, plaintiff's attorney, and Best via email that the meeting would be held the following day at 3:30 p.m. in Urbana, Illinois. Plaintiff's attorney responded via email that he

---

[2]The final report, which included the results from blood tests, was dated June 9, 2015. A preliminary report was authored on May 7, 2015, which provided that plaintiff was "stable and his medical condition controlled."

- 3 -

could not appear in Urbana on such short notice. Plaintiff's attorney requested that the meeting be relocated to a Chicago facility or rescheduled for a different date. Plaintiff also responded to Hall via email additionally expressing his inability to attend the meeting in Urbana on short notice. Plaintiff stated that he had learned Hall and other administrators were in Chicago on June 9, 2015. In light of that information, plaintiff asked why the meeting could not be relocated to Chicago.

¶ 9 The June 10, 2015, SPPC meeting was held as planned in Urbana. Hall contacted[3] plaintiff, advising that, as a result of the meeting, the SPPC would be recommending plaintiff's dismissal for "unprofessional behavior" to the CCSP. The CCSP would consider that recommendation at its June 26, 2015, meeting, which was to be held via video conference, thus allowing plaintiff to attend in Urbana or Chicago. The correspondence alerted plaintiff to his rights in relation to the CCSP meeting, such that he could provide additional materials and bring an advisor or faculty member to speak on his behalf. The correspondence also informed plaintiff of his right to have an attorney present, but that the attorney could not speak on his behalf.

¶ 10 In a letter dated June 15, 2015, Timothy Murphy, the chair for the CCSP, further advised plaintiff of the procedures for the upcoming CCSP meeting. Initially, the CCSP would consider the SPPC's recommendation to dismiss plaintiff for unprofessional behavior. If the CCSP agreed that plaintiff should be dismissed, plaintiff could appeal that decision in writing or in person during the course of the same meeting. If plaintiff chose to appeal in person, he would be invited to offer an opening statement then the committee would engage in a question and answer session with him. Plaintiff also would have the opportunity to provide a closing statement. On June 22 and June 24, 2015, Murphy emailed plaintiff to inquire whether he was available for the June 26, 2015, meeting. In his second amended complaint, plaintiff stated that neither he nor his attorney appeared at the June 26, 2015, CCSP meeting "because the process to date was so biased and prejudiced, that there was no point in he [*sic*] or his [c]ounsel appearing at the hearing."

¶ 11 On June 26, 2015, the CCSP held its scheduled meeting and voted to accept the recommendation of the SPPC, thereby dismissing plaintiff from the College of Medicine for unprofessional behavior. In a letter dated June 27, 2015, Murphy informed plaintiff that the CCSP reviewed the SPPC's recommendation and the relevant materials "in light of various components of your educational record, and in light of the College's Academic Policies and Professional Standards." The letter informed plaintiff that the CCSP voted to accept the SPPC's recommendation to dismiss plaintiff. The letter further stated that, despite having notice of his rights to appeal the decision, plaintiff failed to comply with the requisite appeal procedures and, therefore, waived his right to appeal. The letter, however, informed plaintiff that he had a right to file a grievance to challenge the CCSP's decision within 60 days. Plaintiff did not file a grievance.

¶ 12 On June 26, 2015, plaintiff sought a temporary restraining order, a preliminary injunction, a permanent injunction, and a declaratory judgment. The requests were denied, and plaintiff ultimately filed the second amended complaint for declaratory judgment under consideration here. Attached to plaintiff's second amended complaint were the following:

[3]The correspondence is in letter format, but indicates that it was transmitted "via PEAR." Review of the record indicates PEAR is an internal university email system.

(1) Hall's April 14, 2015, letter to plaintiff; (2) the University police report; (3) the May 1, 2015, emails from Hall and Best; (4) the May 3, 2015, email from Best to plaintiff; (5) Hall's May 18, 2015, letter to plaintiff; (6) plaintiff's June 8, 2015, response to Hall; (7) plaintiff's attorney's June 8, 2015, letter to Hall; (8) the June 9, 2015, email exchange between plaintiff and Hall; (9) the June 9, 2015, email responses from plaintiff and plaintiff's attorney to Hall; (10) the June 9, 2015, report from Dr. Newman; (11) Hall's undated letter "via PEAR" to plaintiff informing him of the SPPC's recommendation; (12) Murphy's June 15, 2015, letter to plaintiff; (13) Murphy's June 24, 2015, email to plaintiff; (14) Murphy's June 27, 2015, letter to plaintiff; (15) the University student disciplinary policy, which plaintiff stated was "in effect at all relevant times"; and (16) a print out of photographs depicting the members of the Board. Notably, the University student disciplinary process described "the student conduct process," which included "educational and disciplinary measures." Neither the SPPC nor the CCSP were included in the University student disciplinary process.

¶ 13     In his second amended complaint, plaintiff alleged Hall's decision to place him on a temporary suspension was not supported by the police report, where nothing in the report indicated any behavior that placed him, the community, or the patients' safety at risk. Plaintiff additionally alleged that Hall's decision to temporarily suspend him and require him to complete a fitness of duty evaluation exceeded Hall's authority. Plaintiff further alleged that Hall's conclusion that he failed to comply with the fitness of duty evaluation and Hall's decision to bring the matter to the attention of the SPPC were not based on fact, in violation of his due process rights under the fourteenth amendment of the federal constitution and "article 1, § 1" of the Illinois Constitution and violated the University student disciplinary policy. Plaintiff alleged that Hall violated the University student disciplinary policy wherein, once he was examined by Dr. Newman and found to be stable and capable to perform his duties, he met the conditions of his suspension and should have been automatically entitled to re-enter the College of Medicine. Plaintiff also claimed that defendants failed to comply with the procedures for the filing of a complaint under the University student disciplinary policy. Plaintiff further asserted that Hall exceeded his authority by finding that plaintiff failed to comply with the fitness of duty evaluation and bringing the matter to the attention of the SPPC. Plaintiff next alleged that the SPPC's decision recommending his dismissal from the medical program for unprofessional behavior violated his due process rights and the University student disciplinary policy, in that he was given insufficient notice of the place and time of the meeting and the proper procedures for the filing of a complaint were not followed. Plaintiff additionally claimed that the CCSP's decision to dismiss him from the medical program for unprofessional behavior violated the University student disciplinary policy and his federal and state due process rights on the same bases. Plaintiff requested the entry of a declaratory judgment in his favor and reinstatement of his status as a student in the College of Medicine.

¶ 14     In response, defendants filed a motion to dismiss pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2014)), arguing that the circuit court lacked subject matter jurisdiction to consider plaintiff's second amended complaint because defendants' actions were protected by the doctrine of sovereign immunity. In their memorandum in support of their motion, defendants argued that plaintiff failed to plead that defendants violated any applicable rule or procedure, and therefore, the exception to the doctrine of sovereign immunity, which was applied in *Leetaru*, was not applicable to the

underlying case. Defendants explained that plaintiff's conduct was reviewed under the College of Medicine's College Academic Procedure (CAP) and not the University student disciplinary policy. Defendants attached an affidavit authored by Hall, which confirmed as much and provided the relevant language of the CAP. Defendants noted that plaintiff never alleged in his second amended complaint that the University student disciplinary policy actually controlled his circumstances.

¶ 15    In his affidavit, Hall attested that the College of Medicine annually published a "Statement on Professional Behavior," which "describe[d] in detail the professional standards applicable to all medical students." Hall emphasized the importance of students' compliance with the academic standards, a violation of which was not only a disciplinary issue but also an academic concern. Relying on the language of both the CAP and the University student disciplinary policy, which he acknowledged, Hall attested that the College of Medicine had the discretion to employ the University student disciplinary policy or to use its own policy when reviewing a student's alleged unprofessional behavior. The CAP provided:

> "Where there is any question about a student's suitability for the profession, based upon a student's failure to meet academic and/or professional/behavioral standards, the College reserves the right to evaluate the student according to its own policies and procedures. Certain types of behavior, however, may be determined to be more amenable to adjudication through the campus disciplinary process. In those cases, the site administrative officer may opt to pursue disciplinary charges against the student through the UIC Student Disciplinary Procedures."

In contrast, the University student disciplinary policy provided:

> "The Student Disciplinary Policy is recognized as the standard process for handling incidents of student misconduct. The Student Disciplinary Policy is independent from and may be implemented in addition to any other University document, policy, or process which may exist and relates to matters of student behavior. This policy governs all regional sites of the University of Illinois at Chicago."

Hall attested that the CAP was used to review plaintiff's alleged lack of academic professionalism "in part because [plaintiff's] alleged misconduct raised questions as to [his] suitability to perform as a licensed physician."

¶ 16    In their memorandum in support of their motion to dismiss, defendants further argued that, under the CAP, the proper procedures were followed in reviewing the allegations against plaintiff, and plaintiff was afforded opportunities to avail himself of his rights. Defendants argued that plaintiff, therefore, could not support his due process claims. Defendants additionally argued that plaintiff failed to establish Hall and Murphy exceeded their authority in the process of plaintiff's dismissal and, therefore, the court lacked jurisdiction over them.

¶ 17    Plaintiff filed a response to defendants' dismissal motion. In the response, plaintiff insisted that his claim was not barred by the doctrine of sovereign immunity because the officer suit exception applied. Plaintiff maintained that his second amended complaint sufficiently alleged violations of his due process rights and of the University student disciplinary policy. Plaintiff argued that the CAP did not apply to the situation and that, contrary to defendants' argument, the communications between the parties did not notify him

that the CAP would be used to resolve the matter. Plaintiff added that there was a material question of disputed fact regarding whether the University student disciplinary policy applied to "the process utilized by the College of Medicine to prosecute the complaint against plaintiff." In addition, plaintiff argued that his requested relief did not operate to control state action where, upon his reinstatement into the medical program, defendants could proceed to dismiss him from the College of Medicine consistent with his due process rights and the University student disciplinary process. In his response, plaintiff also requested leave to depose Hall. He attached an affidavit authored by his attorney, attesting that there was a necessity to determine whether the University student disciplinary process applied to the prosecution of the complaint against plaintiff.

¶ 18    The circuit court granted defendants' motion to dismiss, finding that the court lacked subject matter jurisdiction to consider plaintiff's request for declaratory relief due to the doctrine of sovereign immunity. Plaintiff then filed a motion to reconsider, which the circuit court denied. In so doing, the court noted that plaintiff did not allege in his second amended complaint that his dismissal was based on the University student disciplinary policy. This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Plaintiff contends that the circuit court erred in dismissing his second amended complaint where the complaint demonstrated defendants violated his due process rights in ordering his dismissal from the medical program and exceeded their authority by failing to comply with the University student disciplinary policy.

¶ 21    A section 2-619 motion to dismiss, like the one here, admits the sufficiency of the complaint, but asserts an affirmative matter that defeats the claim. *Leetaru*, 2015 IL 117485, ¶ 40. All pleadings and any supporting documentary evidence are considered in the light most favorable to the nonmoving party. *Illinois Collaboration on Youth v. Dimas*, 2017 IL App (1st) 162471, ¶ 24. Plaintiff's complaint was dismissed for lack of subject matter jurisdiction. We review a circuit court's decision whether to grant a motion to dismiss for lack of subject matter jurisdiction *de novo*. *Leetaru*, 2015 IL 117485, ¶ 41.

¶ 22    As stated, defendants challenged the circuit court's jurisdiction based on the doctrine of sovereign immunity. "The doctrine of sovereign immunity was abolished in Illinois by the 1970 Constitution '[e]xcept as the General Assembly may provide by law.' " *Id.* ¶ 42 (quoting Ill. Const. 1970, art. XIII, § 4). The General Assembly subsequently reinstated the doctrine *vis-à-vis* the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2014)), which provides that, except as established in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2014)) and several other specified statutes, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2014); *Leetaru*, 2015 IL 117485, ¶ 42. The Court of Claims Act provides that the Court of Claims shall have exclusive jurisdiction to hear and determine nine established matters, including "[a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2014). The Court of Claims Act additionally provides, in relevant part, that it shall have exclusive jurisdiction over all tort claims against the Board of Trustees of the University of Illinois. 705 ILCS 505/8(d) (West 2014); see *Rembis v. Board of Trustees of the University of Illinois*, 249 Ill. App. 3d 1, 3-4 (1993). Sovereign immunity aims to "protect[ ] the State from interference in

its performance of the functions of government and preserve[ ] its control over State coffers." (Internal quotation marks omitted.) *Leetaru*, 2015 IL 117485, ¶ 47.

¶ 23 Plaintiff's second amended complaint was filed against the Board, Murphy, as an individual, and Hall, as an individual. The supreme court has advised that the determination of whether an action is one against the State depends on the issues involved and the relief sought, not the formal identification of the parties. *Id.* ¶¶ 44-45. The naming of a State agent or agency as the defendant does not mean the action will not be considered as one against the State itself. *Id.* ¶ 44. "[T]he prohibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." (Internal quotation marks omitted.) *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). That said, "the fact that the named defendant is an agency or department of the State does not mean that the bar of sovereign immunity automatically applies. In appropriate circumstances, plaintiffs may obtain relief in circuit court even where the defendant they have identified in their pleadings is a state board, agency or department." *Leetaru*, 2015 IL 117485, ¶ 44.

¶ 24 The supreme court has recognized an exception to the doctrine of sovereign immunity when a plaintiff's complaint alleges that a State official's conduct violates statutory or constitutional law or is in excess of his or her authority because such conduct is not considered conduct of the State; instead, such conduct taken by a State official without legal authority strips the official of his or her official status. *Id.* ¶¶ 45-46. Consequently, a complaint that seeks "to prospectively enjoin such unlawful conduct may be brought in the circuit court without offending sovereign immunity principles. [Citations.]" *Parmar v. Madigan*, 2018 IL 122265, ¶ 22. This exception is commonly known as the "officer suit" exception to sovereign immunity. *Leetaru*, 2015 IL 117485, ¶ 46. "In such instances, the suit is not against the State. [Citation.] The exception is based on the presumption that 'the State, or department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by proper action instituted by a citizen.' " (Internal quotation marks omitted.) *Illinois County Treasurers' Ass'n v. Hamer*, 2014 IL App (4th) 130286, ¶ 41 (quoting *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261 (2005)). "[N]ot every legal wrong," however, will trigger the exception, such as where the conduct "amounts to a simple breach of contract" or where a state official "exercised the authority delegated to him or her erroneously." *Leetaru*, 2015 IL 117485, ¶ 47. "The exception is aimed, instead, at situations where the official is not doing the business which the sovereign has empowered him or her to do or is doing it in a way which the law forbids." *Id.*

¶ 25 Plaintiff argues that the officer suit exception applies in this case where his second amended complaint alleged that defendants violated his due process rights and exceeded their authority by failing to comply with the University student disciplinary policy. Plaintiff maintains that the allegations in his second amended complaint were similar to those found in *Leetaru* and, therefore, his complaint should be remanded to the circuit court for further proceedings.

¶ 26 In *Leetaru*, the plaintiff filed a lawsuit against the Board of Trustees of the University of Illinois and a university associate vice chancellor seeking to enjoin them from proceeding

with an investigation into the plaintiff's alleged misconduct as a research graduate student. *Id.* ¶ 33. The plaintiff did not challenge the university's right to investigate the alleged research misconduct; rather, he challenged the defendants' conduct in failing to comply with the university's rules and regulations governing student discipline. *Id.* ¶ 34. More specifically, the plaintiff argued that, if the defendants were going to investigate him for research misconduct, they should be required to abide by the rules, policies, bylaws, and regulations the university had promulgated to govern such investigations. *Id.* ¶ 35. The plaintiff's complaint additionally alleged that the university's internal or administrative procedures failed to provide a mechanism for him to compel the defendants to follow their own policies. *Id.* The complaint specified that the defendants exceeded their authority by violating nine of the university's policies and procedures.

¶ 27 Ultimately, the supreme court found that the doctrine of sovereign immunity did not limit exclusive jurisdiction over Leetaru's complaint to the Illinois Court of Claims. *Id.* ¶ 49. The supreme court reasoned: "Because sovereign immunity affords no protection when agents of the State have acted in violation of statutory or constitutional law or in excess of their authority, which is precisely what [the plaintiff] has alleged, Illinois precedent compels the conclusion that he was entitled to proceed in circuit court." *Id.* ¶ 50. The court clarified that the plaintiff did not seek redress for a past wrong; instead, the plaintiff sought "only to prohibit future conduct (proceeding with the disciplinary process) undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority. Claims of this type are not claims against the State at all and do not threaten the State's sovereign immunity." *Id.* ¶ 51.

¶ 28 In order to determine whether the principles of sovereign immunity apply to the case before us, we turn to plaintiff's second amended complaint. See *id.* ¶ 45 ("[w]hether an action is in fact one against the State and hence one that must be brought in the Court of Claims depends on the issues involved and the relief sought"). In his second amended complaint, plaintiff alleged that defendants failed to provide him with the due process rights afforded him by the University student disciplinary policy and asserted that defendants violated the University student disciplinary policy in excess of their authority. In his complaint, plaintiff noted the University student disciplinary policy and attached a copy of said policy, alleging it was "in effect at all relevant times."

¶ 29 Plaintiff, however, never alleged that defendants actually relied upon the University student disciplinary policy as the basis for his dismissal from the College of Medicine. In fact, plaintiff's second amended complaint acknowledged that, in Hall's initial April 14, 2015, letter advising plaintiff of his temporary suspension, he was informed that his failure to comply with the fitness of duty evaluation "may lead to action by the Student Progress and Promotion's Committee or referral of the matter to the disciplinary process." Accordingly, plaintiff knew his refusal to have his evaluation completed by Dr. Marder could result in action by the SPPC, as is what occurred, *or* a referral to the disciplinary process. The April 14, 2015, letter did not restrict the College of Medicine's means of reviewing plaintiff's underlying behavior to the University disciplinary process.

¶ 30 Moreover, the CAP afforded defendants the ability to use the College of Medicine's own policies and procedures to evaluate plaintiff's decision to forego submitting to a fitness of duty evaluation with Dr. Marder. The fitness of duty evaluation was a standard established by the College of Medicine. Although the CAP provided that certain types of behavior "may be

determined to be more amenable to adjudication through the campus disciplinary process," the college's decision to pursue charges under the University student disciplinary policy was discretionary. See, *e.g.*, *Professional Executive Center v. La Salle National Bank*, 211 Ill. App. 3d 368, 379 (1991) ("Illinois courts interpret the word 'may' as permissive and 'shall' as mandatory in private contracts."). The University student disciplinary policy did not control; instead, the student disciplinary policy provided that it was a supplement, both independent of and in addition to, any other University policy. Indeed, Hall's May 18, 2015, letter stated that the SPPC had determined that plaintiff's "consistent disregard for and failure to comply with the directives of the College administration violate[d] the Standards of Professional Behavior as provided in the Student Academic Policies and Professional Standards." Accordingly, defendants indicated that plaintiff's behavior was assessed according to the academic and/or professional/behavioral standards controlled by the CAP, and not the student disciplinary policy. This was confirmed by Murphy's June 27, 2015, letter, informing plaintiff that the CCSP's final decision was made in accordance with "the College's Academic Policies and Professional Standards," not the University student disciplinary policy. Hall's uncontradicted affidavit further confirmed that the CAP was "uniformly applied" when the College of Medicine considered conduct that raised a question regarding a student's professionalism and conduct that had "any bearing whatsoever" on the College of Medicine's curriculum or activity within the curriculum.

¶ 31    Accordingly, review of plaintiff's second amended complaint demonstrates that he failed to allege that defendants were required, and failed, to assess the underlying behavior according to the University student disciplinary policy. Unlike in *Leetaru*, plaintiff, therefore, failed to allege sufficient facts demonstrating that the exception to the doctrine of sovereign immunity applied because defendants exceeded their authority. Despite his attempt to insist that Hall lacked authority to institute the underlying proceedings where he was not a psychologist, plaintiff did not provide factual allegations that defendants acted beyond the scope of their authority through wrongful acts. See *Healy*, 133 Ill. 2d at 308 ("[b]ecause the plaintiff does not allege any of the [d]efendants acted outside the scope of their authority or in violation of law, exclusive jurisdiction over the action must lie in the Illinois Court of Claims"). Plaintiff failed to cite any rules restricting defendants from initiating proceedings against him under the CAP. Instead, defendants' dismissal motion established that defendants, as State officials, exercised their authority delegated to them by the State in conjunction with the language of the CAP.

¶ 32    Furthermore, and critically, plaintiff's second amended complaint established that he was afforded due process rights. Plaintiff alleged that he was not given the appropriate due process rights pursuant to the University student disciplinary policy. However, in their motion to dismiss and Hall's undisputed accompanying affidavit, defendants argued that plaintiff was afforded the requisite due process provided by the CAP. In *Leetaru*, the supreme court noted that

> "[the] defendants' alleged acts and omissions *** involve far more than a mere difference of opinion over how the rules and regulations should be interpreted or applied and are not simply the result of some inadvertent oversight or *de minimis* technical violation. Rather, according to Leetaru, they constitute a fundamental disregard for core provisions governing academic discipline at the University, thereby

- 10 -

exceeding defendants' authority and violating Leetaru's constitutional right to due process." *Leetaru*, 2015 IL 117485, ¶ 49.

Under the facts of our case, plaintiff has not, and cannot, allege that defendants disregarded the College of Medicine's, or the University's, disciplinary proceedings. As stated, the language of the CAP expressly reserved the College of Medicine's right to pursue discipline under its own policies and procedures. It is uncontradicted that plaintiff repeatedly was notified and invited to participate in the underlying proceedings. Plaintiff refused to do so. See *Campbell v. Cook County Sheriff's Merit Board*, 215 Ill. App. 3d 868, 870-71 (1991) ("[d]ue process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him"). We, therefore, find *Leetaru* is distinguishable from the case before us.

¶ 33    In contrast to the relief sought in *Leetaru*—which, as stated, was simply to enjoin the defendants from proceeding with their investigation of the plaintiff's alleged misconduct and require compliance with its own rules, policies, and regulations (*Leetaru*, 2015 IL 117485, ¶ 35)—plaintiff in this case requests his reinstatement into the College of Medicine. In other words, plaintiff does not simply request a modification of future proceedings; he seeks to remedy an alleged wrong. *Cf. id.* ¶ 51 (claims seeking to prohibit future conduct undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority are not against the State and do not threaten the State's sovereign immunity). Accordingly, the relief requested by plaintiff would restrict the State's authority *vis-à-vis* the Board by requiring it to apply the University student disciplinary policy despite the existence of the CAP and its choice to apply that process to the given situation.

¶ 34    In sum, we conclude that the officer suit exception did not apply to this case. The allegations in plaintiff's second amended complaint failed to establish that defendants' actions fell outside the protections afforded by sovereign immunity. We, therefore, conclude plaintiff's second amended complaint was dismissed properly based on lack of subject matter jurisdiction.

¶ 35    We briefly respond to plaintiff's remaining contentions. Plaintiff argued that the circuit court erred in failing to draw all reasonable inferences in his favor and that there is a genuine issue of material fact that prevented the dismissal of his second amended complaint, namely, whether the University student disciplinary process was utilized as a basis for his dismissal from the College of Medicine. We disagree.

¶ 36    The law provides that, when considering whether the existence of a genuine issue of material fact precludes dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law, all pleadings and any supporting documentary evidence must be considered in the light most favorable to the nonmoving party. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). Contrary to plaintiff's argument, his second amended complaint failed to allege sufficient facts allowing the circuit court to infer that defendants' decision to dismiss plaintiff from the College of Medicine was based on the University student disciplinary policy. In alleging defendants violated his due process rights and exceeded their authority, plaintiff cited various sections of the University student disciplinary policy. However, his second amended complaint repeatedly acknowledged that defendants employed the use of the SPPC and the CCSP in reviewing plaintiff's behavior and making a determination that it was unprofessional and supported plaintiff's dismissal. As clarified in Hall's uncontradicted affidavit attached to defendants' motion to dismiss, those

- 11 -

procedures employed by the SPPC and the CCSP were incorporated into the CAP, not the University student disciplinary policy. Plaintiff did not allege anywhere within his second amended complaint that the University student disciplinary policy was applied by defendants to his situation. He merely stated that it was in effect at all relevant times. The fact that the policy was in effect, as were countless other University policies, does not provide a reasonable inference that it was utilized in the underlying circumstances.

¶ 37   Finally, plaintiff's insistence that the University student disciplinary policy was applied in rendering his dismissal does not create a genuine issue of material fact. The evidence offered here in defendants' motion to dismiss and Hall's uncontradicted affidavit did not merely refute facts in plaintiff's second amended complaint. *Evergreen Oak Electric Supply & Sales Co. v. First Chicago Bank of Ravenswood*, 276 Ill. App. 3d 317, 319 (1995) (an "[a]ffirmative matter within the meaning of 2-619(a)(9) must be something more than evidence offered to refute well-pled facts in the complaint"). Instead, as discussed, defendants' motion and Hall's affidavit established that defendants utilized their discretion in applying the CAP to the underlying behavior and followed the procedures found therein to dismiss plaintiff from the medical program. Again, plaintiff's second amended complaint essentially acknowledged as much. Accordingly, a review of plaintiff's second amended complaint and defendants' motion to dismiss does not reveal disputed issues of fact. Instead, defendants' motion to dismiss established an affirmative matter to negate plaintiff's allegation that the officer suit exception applied under these circumstances. Accordingly, the circuit court did not err in dismissing plaintiff's second amended complaint. See *Van Meter*, 207 Ill. 2d at 367 ("[t]he purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation").

¶ 38                                          III. CONCLUSION

¶ 39   We affirm the judgment of the circuit court, dismissing plaintiff's complaint for declaratory judgment for lack of subject matter jurisdiction pursuant to the doctrine of sovereign immunity.

¶ 40   Affirmed.